UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
———————————————————————————x

JOYCE HARTNETT,

                Plaintiff,

        - against -                        04 Civ. 4369 (CM)

THE FIELDING GRADUATE INSTITUTE,
NANCY LEFFERT, FUGI COLLINS and
MARILYN FREIMUTH in their official and
individual capacities,

                Defendants.

———————————————————————————x

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

McMahon, J.:

       Plaintiff Joyce Hartnett filed this action against the Fielding Graduate Institute ("FGI"),

and Nancy Leffert, Fugi Collins and Marilyn Freimuth, in their official and individual capacities

(collectively, the "defendants"), for violation of the Americans with Disabilities Act of 1990

("ADA"), the Rehabilitation Act of 1973 ("Rehabilitation Act"), the New York State Human

Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), and for

breach of contract. Plaintiff alleges that she enrolled in FGI's clinical psychology PhD program

but was prevented from completing the program because FGI refused to provide her with

reasonable accommodations for her disability (lupus). Specifically, plaintiff alleges that FGI's

failure, *inter alia*, to transfer her to a "cluster," or small learning group, that was closer to her

home than the cluster to which she was originally assigned, constituted a violation of federal and

state law.

Defendants move for summary judgment on two grounds. Defendants Collins, Freimuth and Leffert argue – correctly – that individuals cannot be held liable under either the ADA or the Rehabilitation Act. FGI argues – also correctly – that no reasonable trier of fact could conclude that the accommodations sought by plaintiff were "reasonable." Accordingly, defendants' motion is granted and plaintiff's two federal claims are dismissed. The court declines to exercise jurisdiction over plaintiff's state law claims in the absence of any federal claim. Those claims are dismissed without prejudice.

**Facts**

The relevant facts, as set forth in the Complaint, the parties' Rule 56.1 Statements, and other materials submitted in connection with defendants' motion for summary judgment, are as follows:

The Fielding Graduate Institute is a distance-based graduate institution, offering a variety of graduate degrees through a geographically dispersed learning community. (Cplt. ¶ 4; Mem. of Law In Supp. of Def.'s Mot. For Summ. J. ("Mot. For Summ. J.") at 1). In particular, FGI offers a PhD program in clinical psychology, which is accredited by the American Psychological Association ("APA"). (Def.'s Ex. C). While the program consists predominantly of online courses and other remote learning opportunities, it also includes a 300-hour residency requirement. (Def.'s Ex. C). This requirement can be satisfied by demonstrated face-to-face faculty-student contact in a variety of contexts, including attendance at local "cluster" meetings, regional and national program sessions, and one-on-on meetings with faculty members. (Def.'s 56.1 St. ¶¶ 7, 8, 10; Def.'s Ex. D).

Cluster meetings are small learning groups where students meet regularly with local

faculty.  (Cplt. ¶ 12).  Cluster assignments are made by the Admissions Committee, and are

based on the size of the group, the ages, interests, skills, and background of the students, and the

workload of the faculty member.  (Def.'s 56.1 St. ¶¶ 28-31).  The faculty member assigned to

each cluster functions as the academic advisor and mentor for the students in that cluster.  (Def.'s

56.1 St. ¶ 32).  While attendance at cluster meetings counts toward the residency requirement,

participation in cluster groups is not mandatory.  (Def.'s 56.1 St. ¶ 36).

     In September 2000, plaintiff applied to FGI's PhD program in clinical psychology.  (Pl.'s

Ex. A at ¶ 4).  On December 19, 2000, plaintiff was accepted to the program for enrollment the

following academic term, which commenced in March 2001.  (Complaint ("Cplt.") ¶ 9).

Plaintiff informed FGI, both in her application materials and through subsequent correspondence

with faculty members, that she had been diagnosed with Systemic Lupus Erythematosus,

commonly known as lupus.  (Pl.'s Ex. K, L).  As a result of this condition, plaintiff suffered from

severe physical exhaustion, as well as muscle and joint pains, migraine headaches, fever and

nausea.  (Pl.'s Ex. A at ¶ 3).

     At the time of plaintiff's enrollment, FGI had two faculty advisors in the New York area–

Dr. Stephen Ruffins and Dr. Marilyn Freimuth.  (Def.'s Ex. D).  Dr. Ruffins' cluster group met

regularly at 400 Second Avenue, New York, New York.  (Def.'s Ex. CC). Dr. Freimuth's cluster

group met regularly at 21 West 86th Street, New York, New York.  (Def.'s Ex. TT).

     After learning, in January 2001, that she had been assigned to Dr. Ruffins' cluster group,

plaintiff asked to be transferred to Dr. Freimuth's cluster group.  (Def.'s Ex. F).  Plaintiff was

informed by defendants that FGI was unable to grant her request for a cluster transfer.  (Def.'s

Ex. I, K). Plaintiff then sought, and was denied, a leave of absence, "part-time status" and/or

remote participation in FGI cluster group meetings.  (Pl.'s Ex. A at ¶¶ 12, 13).  Plaintiff

attempted through each of these requests to gain admission into Dr. Freimuth's cluster group.

On October 1, 2001, after completing only one course at FGI, plaintiff withdrew from the

program. (Def.'s Ex. H, MM).

### Standard of Review

A party is entitled to summary judgment pursuant to Rule 56 when there is no "genuine

issue of material fact" and the undisputed facts warrant judgment for the moving party as a

matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  In

addressing a motion for summary judgment, "the court must view the evidence in the light most

favorable to the party against whom summary judgment is sought and must draw all reasonable

inferences in [its] favor."  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574

(1986).  Whether any disputed issue of fact exists is for the Court to determine.  Balderman v.

United States Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989).  The moving party has the initial

burden of demonstrating the absence of a disputed issue of material fact.  Celotex v. Catrett, 477

U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must present

"specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The party

opposing summary judgment "may not rely on conclusory allegations or unsubstantiated

speculation" and "must do more than simply show that there is some *metaphysical doubt* as to

the material facts."  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); Matsushita Elec.

Indus. Co., 475 U.S. at 586 (citations omitted).  Moreover, not every disputed factual issue is

material in light of the substantive law that governs the case.  "Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude summary

judgment." <u>Anderson</u>, 477 U.S. at 248.

## Conclusions of Law

A. <u>Americans with Disabilities Act and Rehabilitation Act</u>

  In her first two causes of action, plaintiff alleges that defendants' failure to provide reasonable accommodations for her disability violated the ADA and the Rehabilitation Act. However, individuals cannot be held liable under either of these statutes. Moreover, none of plaintiff's requested accommodations– cluster group transfer, leave of absence, part-time status, or remote participation via video or tele-conference– constituted "reasonable accommodations" within the meaning of these statutes. Therefore, plaintiff's first two causes of action are dismissed.

  1. *Individual Liability Under the ADA or Rehabilitation Act*

  In addition to naming FGI, plaintiff names as defendants Marilyn Freimuth, faculty member at FGI, and Nancy Leffert and Fugi Collins, both Associate Deans at FGI. However, "Individual defendants may not be held personally liable for alleged violations of the ADA or the Rehabilitation Act." <u>Menes v. CUNY Univ. of New York</u>, 92 F.Supp.2d 294, 306 (S.D.N.Y. 2000) (citations omitted). Nor can individuals be named in their official or representative capacities as defendants in ADA or Rehabilitation Act suits. <u>Id</u>. Therefore, plaintiff's ADA and Rehabilitation Act claims against the individual defendants, both in their individual and official capacities, are dismissed.

  2. *Reasonable Accommodations Under the ADA and Rehabilitation Act*

  Under both the ADA and the Rehabilitation Act, a covered entity is required to provide reasonable modifications of their policies, practices and procedures when necessary to avoid

discrimination against a person on the basis of a disability. <u>Innovative Health Sys. v. City of White Plains</u>, 931 F.Supp. 222, 239 (S.D.N.Y. 1996). Title III of the ADA provides that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.[1]

42 U.S.C. § 12182(a). Moreover, "discrimination" is defined as including

> . . . a failure to make reasonable modifications in policies, practices, and procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations . . .

42 U.S.C. § 12182(b)(2)(A)(ii).

> Similarly, the Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity[2] receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

Because the standards adopted by the ADA and the Rehabilitation Act are substantially similar, the court considers these claims together. <u>Powell v. Nat'l Bd. Of Med. Exam'rs</u>, 364

---

[1] The ADA defines a "public accommodation" as a private entity affecting commerce, including, *inter alia*, "a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education." 42 U.S.C. § 12181(7)(j). FGI, therefore, constitutes a public accommodation under the ADA.

[2] The term "program or activity" is defined as including all of the operations of "a college, university or other postsecondary institution, or a public system of higher education . . . any part of which is extended Federal financial assistance." 29 U.S.C. § 794(b)(2)(A).

F.3d 79, 85 (2d Cir. 2004) (citing Henrietta D. v. Bloomberg, 331 F.3d 261, 273 (2d Cir. 2003)).

In order to establish a *prima facie* case under either the ADA or the Rehabilitation Act, plaintiff must show (1) that she is an individual with a disability within the meaning of the statute; (2) that defendant had notice of her disability; (3) that she was otherwise qualified to meet the program requirements; and (4) that defendant refused to make reasonable accommodations. See Stone v. City of Mount Vernon, 118 F.3d 92, 96-97 (2d Cir. 1997). Defendant can defeat this claim by showing that the proposed accommodations are not "reasonable." See id.

In order to constitute a "reasonable accommodation," the requested modification must actually "accommodate" the alleged disability. Otherwise, it would constitute no more than a personal preference, which is not protected under the ADA or Rehabilitation Act. The relevant statutes " . . . mandate[] reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally." Felix v. New York City Transit Auth., 324 F.3d 102, 107 (2d Cir. 2003). In other words, "The obligation to make reasonable accommodation . . . does not extend to the provision of adjustments or modifications that are primarily for the personal benefit of the individual with a disability." Raffaele v. City of New York, 2004 WL 1969869, *16 (E.D.N.Y. Sept. 7, 2004).

Additionally, a "reasonable" accommodation is one which does not either impose an undue hardship on the program's operation or "fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 41.53, § 35.130(b)(7); see also Powell, 364 F.3d at 88; Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 138 (2d Cir. 1995). The ADA defines undue

hardship as an action requiring significant difficulties or expense when considered in light of a

number of factors, one being the type of service or product offered.  42 U.S.C. § 12111(10)(A);

see also Powell, 364 F.3d at 88; Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 221

(2d Cir. 2001).  Accordingly, this Circuit has recognized that undue hardship "is a relational

term" – it looks not only at the costs of providing the proposed accommodation, but also the

benefits that will result.  Lovejoy-Wilson, 263 F.3d at 221 (citing Stone, 118 F.3d at 98).   In

other words, an accommodation is reasonable "only if its costs are not disproportionate to the

benefits that it will produce."  Borkowski, 63 F.3d at 138.

       The question of whether a proposed accommodation is reasonable is fact-specific and

must be evaluated on a case-by-case basis.  Kennedy v. Dresser Rand Co., 193 F.3d 120, 121 (2d

Cir. 1999) (citing Wernick v. Fed. Reserve Bank, 91 F.3d 379, 385 (2d Cir. 1996)).  In this case,

plaintiff alleges that she suffers from lupus.  She has submitted an affidavit from a physician

indicating that her illness substantially inhibits her ability to perform three major life activities–

walking, breathing and working.  (Pl.'s Ex. B).  Defendants have not challenged that conclusory

testimony.  Moreover, defendants were admittedly aware of her condition.  There is no dispute

that plaintiff was otherwise qualified to meet the FGI program requirements, or that FGI failed to

accommodate her disability by transferring her to a different cluster group, as she requested, or

by permitting her to take a leave of absence, participate in the doctorate program on a part-time

basis, or attend cluster group meetings via video- or tele-conference.

       The only issue is whether the accommodations sought by plaintiff were reasonable.

Because no reasonable trier of fact could reach that conclusion, FGI's motion for summary

judgment should be granted.

(a)     Cluster Group Transfer

Plaintiff principally asked FGI to transfer her from Dr. Ruffins' cluster group to Dr. Freimuth's cluster group.  The undisputed evidence establishes that this was not a reasonable accommodation.

In the context of this lawsuit, plaintiff, who lives at 351 Barway Drive in Yorktown Heights, New York, argues that transferring her to Dr. Freimuth's group would have accommodated her disability because it would have lessened her commute, and thereby made it more manageable, in two ways.  First, plaintiff asserts that Dr. Freimuth's group sometimes met at the professor's "home office" in Bedford, New York, in Westchester County, which is closer to plaintiff's home than Manhattan.  However, plaintiff offers no evidence – other than her own surmise – to support her conclusion that the group sometimes met in Bedford.  Plaintiff was not in Dr. Freimuth's cluster group, so she has no basis (other than, perhaps, hearsay) for making this assertion; she has not obtained an affidavit or testimony from anyone who ever attended a cluster meeting in Bedford.  Dr. Freimuth testified, without contradiction, that her home office was never used as a FGI office. (Def.'s Ex. SS).  Plaintiff has failed to raise a genuine issue of fact on this issue.

The second alleged commuting advantage identified by plaintiff is that  Dr. Freimuth's Manhattan office (which is on West 86th Street between Central Park West and Columbus Avenue) is closer to plaintiff's home than is Dr. Ruffins' office to plaintiff's home (which is on Second Avenue between 23rd and 24th Streets).  But the unrefuted evidence offered by FGI establishes that Dr. Ruffins' office is between two and three miles further from plaintiff's home in Yorktown Heights than is Dr. Freimuth's office.  (Def.'s Ex. O-T). Yorktown Heights is just a

few miles south of the Westchester - Putnam County border. Plaintiff's home is approximately 45 miles north of midtown Manhattan. No reasonable trier of fact could conclude that, in the context of a 45 mile commute, two or three miles is a difference that makes a difference.

Plaintiff claims that when she attended Dr. Ruffins' cluster group for the first time, the commute took an extra hour because of congestion caused by a "gay pride parade," a "produce fair," and construction. (Pl.'s Ex. A). While the court recognizes that traffic must be difficult for plaintiff due to her medical condition, she could have encountered traffic congestion from other sources had she been traveling to Dr. Freimuth's cluster group. The delay might have been a function of the route plaintiff chose; there are various ways to arrive at Second Avenue and 23rd Street from Yorktown Heights, not all of which would have taken plaintiff through the traffic congestion she encountered.[3]

In any event, a traffic jam that prolonged plaintiff's commute on one particular occasion does not give her grounds for obtaining a change in her course assignment as an accommodation under the ADA or Rehabilitation Act. Indeed, at least one court in this Circuit has held that difficulties in commuting need not be accommodated. See Raffaele, 2004 WL 1969869, at *16.

But assuming *arguendo* that commutation were something that needed to be accommodated, plaintiff has not come close to making a case that traveling two or three fewer miles in a car in the context of a 45 mile trip would actually accommodate her disability.

---

[3] Actually, no logical route between Yorktown Heights and Dr. Ruffins' cluster group would have taken plaintiff anywhere close either to the customary site of the Gay Pride parade (which is held in June– not April– along Fifth Avenue, from midtown to Greenwich Village) or to a "produce market" (the Union Square Greenmarket being the most likely candidate, although it is open only on Monday, Wednesdays, Fridays and Saturdays). Nonetheless, I accept plaintiff's testimony as true for purposes of the instant motion.

Plaintiff's doctor averred that her lupus limited her ability to walk, breathe and work.  (Pl.'s Ex. B).  Only walking is implicated by her request for a group transfer.  This court can envision circumstances in which the location of a group assignment would have such an impact on a student's commute that accommodation by reassignment might be warranted.  However, there is no evidence that plaintiff presents such a case.  Plaintiff did not commute to Manhattan by train and then either walk or take the subway to reach her final destination.[4]  Plaintiff was sitting in a car.  She adduces no evidence that she would have had greater difficulty finding a parking space (or garage) close to her ultimate destination on Second Avenue than on West 86th Street.[5]

The reason why plaintiff adduced no evidence that a change would have impacted her commute is simple: plaintiff did not really want to change her group because of commute-related circumstances.  The undisputed evidence establishes that plaintiff asked to transfer to Dr. Freimuth's group because she preferred to study with a female mentor.  In her e-mail requesting a transfer, plaintiff wrote, "I believe (as did a recent study published in the APA's Monitor on Psychology) that [it] is advantageous as a developing female professional in the field to have a female mentor/ cluster faculty member."  (Def.'s Ex. F).  Moreover, plaintiff's other attempts at "accommodation" – her request for a leave of absence, part-time status, or remote participation – were transparently aimed at allowing her to study with Dr. Freimuth, the professor of her choice

---

[4] If she had commuted by public transportation, Metro-North would have taken plaintiff to Grand Central Station.  I take judicial notice that Second Avenue and 23rd Street would have been a far more convenient location to the terminus of Metro-North than West 86th Street and Columbus Avenue.

[5] Those who are familiar with both locations might well say that it is far easier to find parking close to Second Avenue and 23rd Street than anywhere on West 86th Street.  However, plaintiff adduces no evidence either way.

on gender grounds. Plaintiff's preference for a female mentor may be understandable, but she cannot use her lupus as a ruse to obtain the teacher of her personal preference.

Moreover, even if plaintiff's request for Dr. Freimuth really did have something to do with her lupus, a cluster group change is not a "reasonable" accommodation because it would have imposed an undue burden on Dr. Freimuth, the other students in her cluster, and the FGI program as a whole. According to the undisputed evidence, cluster group assignments are made by the admissions faculty with particular attention to the composition of each cluster. Each group is designed to balance the faculty member's workload against the size of the group, the ages of the students, and the different students' interests, skills, and backgrounds. (Def.'s Ex. UU, YY). At the time plaintiff made her request, Dr. Freimuth's cluster group was over-subscribed, and FGI determined that adding plaintiff to the group would disrupt the existing balance. (Def.'s Ex. VV). For this reason, FGI viewed plaintiff's request as unreasonable.

This court must ". . . accord the faculty's professional judgment great deference" in a matter so intimately related to pedagogy. Powell, *supra*, 364 F.3d at 88. When the academic burden on the program is weighed against the minuscule medical (as opposed to educational) benefit to plaintiff that would result from granting her request, there is no question that the accommodation plaintiff sought was not "reasonable."

This is underscored by the fact that plaintiff did not need any accommodation at all in order to fulfill the requirements of the program. She was not required to participate in a cluster group in order to obtain her degree. Group meetings were one of several ways she could have satisfied the program's residency requirement. (Def.'s Ex. QQ). Plaintiff even could have satisfied her residency requirements by attending one-on-one meetings with Dr. Freimuth outside

the cluster context – perhaps at the professor's "home office" in Bedford, which is extremely close to Yorktown Heights.  (Def.'s Ex. K, FFF).  Plaintiff's lack of interest in anything except attendance at a cluster group with a female leader is ultimately fatal to her claim that she was seeking a "reasonable" accommodation for disability-related reasons.

(b)     Leave of Absence

Plaintiff also claims that defendant's denial of her request for a leave of absence constitutes denial of a reasonable accommodation.  However, the purpose of plaintiff's proposed leave of absence was to ensure that she got a place in Dr. Freimuth's cluster the following term.  (Cplt. ¶ 18; Pl.'s Ex. L).  Because a cluster group transfer is not a reasonable accommodation, it follows that a leave of absence designed to achieve such a transfer also is not a reasonable accommodation.  Moreover, while FGI policy provides for matriculated students to take leaves of absence under certain circumstances, it does not provide for admission deferrals, which essentially is what plaintiff had requested.  (Def.'s Ex. AAA, BBB).

(c)     Part-time Status

Plaintiff also claims that FGI's failure to grant her part-time status, and a corresponding reduction in tuition, violates her right to a reasonable accommodation under the ADA and Rehabilitation Act.  However, FGI classes are offered online and are taken at each student's own pace.  (Def.'s Ex. AAA).  Students may choose to complete the program in as few as four years or as many as nine.  (Def.'s Ex. AAA).  Therefore, plaintiff's request for part-time status simply does not constitute an accommodation, much less a reasonable accommodation.  Plaintiff, like all students at FGI, was free to take as many classes as she liked whenever she liked, even without being granted "part-time status."

Plaintiff's request for a reduction in tuition – a modification that is not contemplated by FGI policy and that is not granted to other students – would not have "accommodated" her disability in any way. (Def.'s Ex. AAA). Therefore, such a request does not constitute a reasonable accommodation within the meaning of the applicable statutes.

        (d)    Video/ Tele-Conferencing

Last, plaintiff claims that FGI denied her a reasonable accommodation by refusing to permit her to participate in cluster meetings via video and/or tele-conference.

Plaintiff's proposal was not reasonable because, had it been accepted, it could have jeopardized FGI's accreditation. The APA requires that doctoral programs in clinical psychology must include a minimum of three full-time academic years, "at least one year of which must be in full-time residence (or the equivalent thereof) at that same institution," in order to be accredited. (Def.'s Ex. E). As an "equivalent" to full-time residency, the APA has accepted FGI's requirement that students accrue 300 hours of *face-to-face contact* with faculty. (Def.'s Ex. AAA).

Even if participation via video or tele-conference would meet the "face to face" requirement, no reasonable trier of fact could have concluded that plaintiff required such an "accommodation," because at all times plaintiff was willing to attend cluster group meetings in Manhattan – as long as a female was conducting them. Once again, the only conclusion one can draw from the undisputed evidence is that plaintiff was using her illness as a ruse to get what she really wanted – the type of interactive contact she preferred (cluster group rather than one-on-one) with a female mentor. The ADA and the Rehabilitation Act were not passed by Congress to cater to the pedagogical preferences of students like plaintiff.

3.    *Interactive Process*

Plaintiff also alleges that defendant violated the ADA and the Rehabilitation Act by not engaging in an "interactive process" with plaintiff to find a reasonable accommodation for her disability.

This Circuit has yet to determine whether the failure to engage in an interactive process is itself a violation of either of these statutes.  See Lovejoy-Wilson, 263 F.3d at 219; see also Trobia v. Henderson, 315 F.Supp.2d 322, 337 (W.D.N.Y. 2004); Medlin v. Rome Strip Steel Co., Inc., 294 F.Supp.2d 279, 291 (N.D.N.Y. 2003).  However, the undisputed evidence shows that  FGI did engage in an "interactive process" with plaintiff.  For example, at FGI's March, 2001, orientation session in Santa Barbara, faculty members initiated a meeting with plaintiff to discuss her disability and possible accommodations.  (Def.'s Ex. KK, AAA; Pl.'s Ex. A). Additionally, plaintiff corresponded by email with various faculty members regarding her request for, *inter alia*, a transfer to Dr. Freimuth's cluster.  (Def.'s Ex. F, I, L).  It simply does not follow, from the fact that defendant declined to grant plaintiff's proposed accommodations, that defendant did not engage in an interactive process with plaintiff, or that defendant violated the FGI policy requiring faculty "to determine appropriate accommodations and services based on the documentation provided in consultation with student and other professionals as appropriate."  (Pl.'s Ex. R).

B.    New York State Human Rights Law and New York City Human Rights Law

Plaintiff's third and fourth causes of action allege claims for violation of the NYSHRL and the NYCHRL, respectively.  Claims for disability discrimination arising under the NYSHRL and the NYCHRL are governed by the same legal standards as federal ADA claims.  Rodal v.

Anesthesia Group of Onodaga, P.C., 364 F.3d 113, 117 n.1 (2d Cir. 2004); Mohamed v. Marriott Int'l, Inc., 905 F.Supp. 141, 157 (S.D.N.Y. 1995). Therefore, for the reasons discussed above, plaintiff's third and fourth causes of action are dismissed.

C.    Breach of Contract

In her fifth cause of action, plaintiff alleges a pendent state law claim for breach of contract. Having dismissed plaintiff's underlying federal claims, however, the court declines to exercise pendent jurisdiction over the remaining state law claim. See, e.g., United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995) (same); Twin City Bakery Workers & Welfare Fund v. Astra Atkiebolag, 207 F.Supp.2d 221, 225 (S.D.N.Y. 2002) (same). Accordingly, plaintiff's claim for breach of contract is dismissed without prejudice.

### Conclusion

For the foregoing reasons, the Complaint is dismissed in its entirety.

The Clerk of the Court is directed to enter judgment in favor of defendants, and to close the file.

This constitutes the decision and order of the Court.

Dated: November 14, 2005.

_____
U.S.D.J.

BY FAX TO ALL COUNSEL

16